**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

JENNIFER KANE,                              :

        **Plaintiff**        :        **CIVIL ACTION NO. 3:17-1265**

        **v.**               :                **JUDGE MANNION**

GAP, INC. t/a OLD NAVY,             :

        **Defendant**       :

## MEMORANDUM

Pending before the court, in this age and disability discrimination action filed by plaintiff Jennifer Kane, is a motion for summary judgment pursuant to Fed.R.Civ.P. 56 filed by her former employer, defendant The Gap, Inc. (Doc. 15). Based upon the court's review of the motion and related materials, the defendant's motion will be **GRANTED** with respect to all of plaintiff's claims since the defendant had a legitimate non-discriminatory reason for terminating plaintiff, i.e., her poor performance, and there is no genuine issue for trial that her termination was pretext for age and disability discrimination.


## I.    BACKGROUND

The plaintiff has brought the instant action under the Age Discrimination in Employment Act, ("ADEA"),  29 U.S.C. §621, *et seq*., the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12131, *et seq*., as well as under the Pennsylvania Human Relations Act, ("PHRA"), 43 P.S. §951, *et seq*.[1] She

_____

[1]ADEA and PHRA claims are analyzed under the same standard. *See* Colwell v. Rite Aid Corp., 602 F.3d 495, 500 n.3 (3d Cir. 2010). Also, the

filed her complaint on July 18, 2017. (Doc. 1). Specifically, in Count I, plaintiff raises her ADEA claim alleging that she was terminated because of her age and because her supervisor preferred hiring younger employees. In Count II, plaintiff asserts her claim under the ADA alleging that defendant discriminated against her based on her perceived disability since she received negative performance write-up's as retaliation after she requested a reduction in her work hours due to anxiety. In Count III, plaintiff raises her similar state law claims under the PHRA alleging unlawful employment practices based on her age, her disability and based on retaliation.

After completing discovery, the defendant filed a motion for summary judgment, pursuant to Fed. R. Civ. P. 56,[2] on May 31, 2018. (Doc. 15). The motion was then briefed and, a statement of material facts and responses as well as exhibits were filed. (Docs. 16, 17, 20, 21 & 22).

---

"analysis of an ADA claim applies equally to a PHRA claim." Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999) (citing Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996)). As such, the court will discuss the plaintiff's ADEA and PHRA claims together and, her ADA and PHRA claims together.

[2]Since both parties state the correct standard of review applicable to a summary judgment motion, the court will not repeat it. Suffice to say that to prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact and, that the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *See* Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

## II.  MATERIAL FACTS

The undisputed facts, as supported by the record[3], establish that the plaintiff began working as a sales associate with the defendant's Old Navy brand in May 1999. Old Navy is a wholly owned subsidiary of The Gap, Inc. Plaintiff was promoted to General Manager ("GM") in July 2007, and became the GM of the Old Navy store at the Viewmont Mall in Dickson City, PA on March 10, 2013. Plaintiff's duties included responsibility for the store's overall operations and profitability, and she was expected to lead, coach and develop the store team to execute all key performance metrics, such as sales, merchandising and product placement.

Defendant conducted annual performance evaluations of its employees and, it had a Corrective Action Policy ("CAP") which governed the performance of its employees and provided for performance improvement plans and progressive discipline. The disciplinary actions were: 1) verbal warning; 2) written warning; 3) final written warning; and 4) termination. However, under some circumstances, an employee could be terminated without prior warning or any corrective action. Unacceptable employee conduct, such as the failure to meet the defendant's standard for work performance, could result in corrective action, including termination. Plaintiff was aware of the CAP and knew that the failure of an employee to meet performance expectations was a basis for receiving discipline. For the most

---

[3]The court notes that it only includes material factual statements with support in the record. Legal arguments and conclusions are not included.

part, corrective actions issued to management level employees, such as plaintiff, were prepared in conjunction with Human Relations personnel.

During her employment with defendant, plaintiff received performance evaluations and, some were satisfactory and some indicated that she needed improvement.

On February 1, 2015, Jacob Duprey became the defendant's Market Leader for the Central Pennsylvania Market and plaintiff's direct supervisor. Plaintiff had about six store leaders that reported to her. Duprey became aware of performance issues with the plaintiff, such as her inability to properly develop her store leaders. In fact, from February 2015 through May 2015, five of the plaintiff's store leaders resigned. One of the leaders who resigned was Liz Leon and she allegedly complained to Justin Davis, Regional HR Manager, and to Duprey that plaintiff treated the store leaders poorly and failed to provide them with adequate support. Leon also told Davis and Duprey that plaintiff created a negative working environment. Due to the resignations and the store's difficulty in meeting its demands, Duprey spoke to plaintiff regarding her roles and responsibilities in the company. Duprey testified that the store leaders resigned due to plaintiff's inability to coach and develop her leadership team. Duprey also testified that during his first four months as plaintiff's supervisor, he had several coaching conversations with her and discussed strategies for improving her performance.

Plaintiff testified that the store leaders left because they were disgruntled. Plaintiff also testified that after the store leaders resigned, it took

three to four months to hire replacements and that during the interim, she received only minimal help in the store. She stated that for most of the time only one manager from another store was willing to help her, and that Duprey only intervened at the end when no one would come to assist her. Plaintiff also stated that after April of 2015 her hours increased from 45-50 hours per week to 14 to 16 hours per day, 7 days a week. However, Duprey testified that after the resignations of the store leaders, he temporarily transferred leaders from surrounding stores to the plaintiff's store to provide her with assistance until the positions were filled. Defendant's records reveal that after plaintiff's store leaders resigned, at least three other managers were scheduled to work in the store for designated shifts. Plaintiff had the responsibility to fill the leader positions at her store but she stated that Duprey could also hire for the positions.

On May 5, 2015, Aziana Artabane, age 29, was hired to be Assistant Store Manager at plaintiff's store. Duprey interviewed Artabane several months before he ever issued plaintiff any corrective action and Artabane was hired after the store leaders in plaintiff's store resigned. Duprey recruited Artabane and offered her more money than she was making at the other retail store were she was working. Artabane did not meet plaintiff until she was hired and showed up at the store to work.

On September 1, 2015, plaintiff issued Artabane a Verbal Warning Corrective Action for performance issues. Later in September of 2015, Duprey promoted Artabane to GM of the Old Navy store in Wilkes-Barre, PA, and

increased her salary. Artabane was eligible for a promotion despite the verbal warning plaintiff issued her since it was not a Written or Final Written Warning.

After Artabane's promotion, Duprey asked her if she had any recommendation for her replacement and she suggested Michael Riggi. Riggi was 32 and he had worked with Artabane as a manager at another retail store. Riggi was then hired as the Assistant Store Manager at plaintiff's store.

Plaintiff testified that she began to seek medical care for panic attacks in April 2015, and that she began to experience the attacks due to the increased number of hours she was working. Plaintiff testified that in addition to her long work hours, the intimidation she was experiencing from Duprey caused her to have panic attacks. Plaintiff also stated that she told Duprey about her anxiety and panic attacks in early May of 2015, and that she asked Duprey for a reduced work schedule.

On May 31, 2015, Duprey issued plaintiff a Verbal Warning CAP and Individual Action Plan ("IAP"). Duprey testified that the IAP was issued due to plaintiff's failure to improve her performance, and due to her inability to manage and retain her store leaders. The IAP specified things plaintiff had to do to improve her performance, including conduct weekly meetings with her leadership team to discuss their performance goals, store priorities and ongoing expectations. Plaintiff was given 30 days to implement and achieve the tasks identified in the IAP. Duprey testified that he did not issue any corrective action to a GM without first getting input from Davis.

Plaintiff testified that Duprey issued the IAP as retaliation based on her complaints to him that she was experiencing panic attacks from being required to work over 100 hours per week at the store. She also stated that prior to receiving the IAP, Duprey did not have any discussions with her about her job performance. Duprey, however, stated that he had several conversations with plaintiff about her substandard performance before issuing the IAP and, that plaintiff bore some responsibility over the resignation of the store leaders since she was GM and in charge of managing and retaining talent.

Although plaintiff did not receive any IAP's prior to the one Duprey issued, Michael McCusker, interim District Manager and plaintiff's previous supervisor, had prepared an IAP for plaintiff in January 2015 due to poor performance issues. However, the IAP McCusker prepared was not delivered to plaintiff since he was transitioned out of his position shortly after he prepared it. Nonetheless, McCusker told Duprey about his concerns regarding plaintiff's performance problems. McCusker also told Duprey that he had prepared an IAP for plaintiff that was not delivered to her.

The May 31, 2015 IAP which Duprey issued to plaintiff mistakenly contained male pronouns since he created it based on a pre-existing template and, he explained that the use of male pronouns was a typographical error. After issuing the IAP, Duprey touched base with plaintiff every week to provide her with support and guidance on ways to improve her performance. Duprey stated that the IAP was revised and updated during his conversations

with plaintiff.

Plaintiff testified that the IAP she received from Duprey also addressed issues the entire company was experiencing and that she felt Duprey was discriminating against her and holding her responsible for companywide problems. However, Duprey indicated that plaintiff was not being singled out and held to a higher standard since other GM's in his district were also placed on corrective actions for substandard performance.

Plaintiff was previously diagnosed with anxiety in 2011, and had treated with her physician Dr. Matthew Haley for anxiety intermittently. However, the records from Dr. Haley indicate that the first time plaintiff was seen by him with complaints of job related anxiety was on June 4, 2015. Plaintiff expressed subjective complaints of moderate to severe stress she felt was caused by her job over a 2-month period as well as complaints of physical symptoms. She also stated that work had been very stressful and that she was handling her store without any help. Plaintiff further stated that her boss was not supportive and that he did not return her calls. In particular, plaintiff told Dr. Haley that she felt there was a "conspiracy going around her" and, that she felt "frustrated, isolated and not valued."

Dr. Haley prescribed medication for plaintiff to treat her anxiety. The last time that plaintiff was seen by Dr. Haley before her termination was in July 2015, and she reported that she was "doing better", that she needed "more time with family", and that things were "better at work." Dr. Haley's notes also indicated that the medication he prescribed for plaintiff's anxiety had been

effective for her symptoms. Plaintiff stopped taking the medication Dr. Haley prescribed for her anxiety in March 2016, after she was terminated.

The plaintiff's visit to Dr. Haley was one week after Duprey placed plaintiff on corrective action. Plaintiff explained that she began to work over 100 hours per week before Duprey placed her on corrective action, and that the increased hours eventually caused her to seek medical care from Dr. Haley. She further stated that when she asked Duprey to decrease her work hours in May of 2015, he told her that the increased hours were her own fault. Duprey contradicted plaintiff's testimony and stated that plaintiff never informed him that she was working more then 40 hours per week and that she never requested a reduction in hours. Duprey also testified that it would not be permissible for a GM to work 100 hours per week and that a GM is not expected to work 7 days per week.

According to defendant, plaintiff failed to take the action steps necessary to improve her performance as specified in the May 31, 2015 CAP and IAP. Defendant found that plaintiff failed to hold the required weekly manager meetings and that she failed to regularly provide her store leaders with feedback regarding their performance.

Duprey testified that due to plaintiff's failure to comply with required action steps in the IAP, he continued to receive complaints from the new store leaders about plaintiff's failure to adequately communicate with them and failure to explain the expectations of their jobs. Defendant also claimed that plaintiff failed to make sure her store was adhering to set merchandising

9

guidelines and was executing required shipment and markdown policies.

While plaintiff was GM, the Old Navy store in the Viewmont Mall failed Store Compliance Audits ("SCA") in June and July of 2015. Duprey testified that he asked plaintiff to provide a written plan to address the failed audits and to outline strategies for improvement, but he stated that she failed to do so.

Consequently, on August 21, 2015, Duprey issued a Written Warning to plaintiff alleging that her performance was substandard. Duprey afforded plaintiff 30 days to improve her performance. Duprey also advised plaintiff that if she failed to improve her performance, it could result in further corrective action, including termination.

Despite the warning, Duprey testified that plaintiff failed to show any demonstrable performance improvement for the rest of the 2015 year.

On August 27, 2015, the Old Navy store at the mall failed a third consecutive SCA.

Thus, plaintiff was issued a Final Written Warning by Duprey on January 3, 2016, again alleging her performance was substandard. This warning stated, in part, that plaintiff repeatedly failed to provide her leadership team with necessary time to plan and complete tasks since she changed their schedules and hours without prior notice. The Final Warning also stated that plaintiff failed to make sure shipment and markdown procedures were followed in her store which caused sale merchandise to be left in the store's storage room for several weeks. In his deposition, Duprey further explained that the Final Warning issued to plaintiff was also based on factors such as

hitting performance goals, hiring and retaining talent, hitting service scores, and ensuring that the presentation of the store was consistent with branding requirements.

Additionally, Duprey advised plaintiff in the Final Warning that her performance would be measured over the next 30 days to see if she complied with the action steps detailed in her IAP. He also warned plaintiff that her failure to improve would result in her termination. Further, Duprey stated that he touched base with plaintiff on a weekly basis during the 30-day period to review her performance and to discuss strategies for improvement.

On January 20, 2016, an audit of plaintiff's store was conducted and the store received a passing score in the Store Compliance Category but it received a failing score in the Store Safety category.

Duprey testified that plaintiff's performance did not improve and, after consultation with Davis, he decided to terminate plaintiff. On January 30, 2016, Duprey advised plaintiff that her employment with defendant was being terminated for performance reasons. Duprey stated that while it was customary for employees on corrective action to be given 90 days to improve their performance before termination, plaintiff had been given much more time since her first corrective action was on May 31, 2015.

Plaintiff was 40 years old at the time she was terminated. After plaintiff's termination, Riggi was promoted to GM of the Viewmont Mall Old Navy store.

## III.   DISCUSSION

Plaintiff alleges that defendant terminated her based on her age in violation of the ADEA and based on her perceived anxiety disability. She alleges that Riggi, a younger employee, replaced her and was given her job. She also alleges that Duprey retaliated against her by issuing the IAP when she notified him that she was having panic attacks and requested to stop working over 100 hours per week.

The defendant argues that it is entitled to summary judgment in this disparate treatment case because the plaintiff has not offered sufficient evidence to prove that its actions in terminating her were taken because of her age and because there is no evidence showing that her termination was a pretext for discrimination. The defendant also contends that plaintiff is not a qualified individual under the ADA, and that she cannot establish her termination was due to a disability. With respect to both claims, the defendant states that the plaintiff fails to show that its legitimate reason for terminating her, i.e., her substandard performance, was a pretext for discrimination. The court will first discuss plaintiff's ADEA claim.

### A. ADEA CLAIM

Under the ADEA, employers are prohibited from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. §623(a)(1). "To succeed on an ADEA claim, a plaintiff must establish, by a preponderance of the evidence, that age

12

was the 'but-for' cause of the adverse employment action." Howell v. Millersville University of Pennsylvania, 283 F.Supp.3d 309, 322 (E.D.Pa. 2017) (citing Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177-78, 129 S.Ct. 2343 (2009)). It is not enough for the plaintiff to show that her age was a factor that motivated the employer's action, rather she must point to evidence that could support an inference that her age had a "determinative influence" on the decision. Goss 557 U.S. 176. This burden remains squarely with the plaintiff, who may prove her claims through direct or circumstantial evidence. Id. at 177. Thus, following *Goss*, to prove a disparate-treatment discrimination claim under the ADEA, "the evidence must be a sufficient basis for a reasonable jury to conclude that age was the determinative, but-for cause of the employee's termination." Palmer v. Britton Industries, Inc., 662 Fed.App'x 147, 151 (3d Cir. 2016); *see also* Terrell v. Main Line Health, Inc., 320 F.Supp.3d 644, 656 (E.D.Pa. 2018).

Plaintiff argues that she has presented direct evidence of age discrimination by the defendant. First, plaintiff points to May 2, 2015 emails between Duprey and Davis in which Duprey discussed disciplining plaintiff after all of her store leaders quit. Davis suggested that they follow the progressive discipline and not skip a step as Duprey proposed, i.e., issue an IAP verbal warning as opposed to written warning. Duprey agreed with Davis. Davis then responded that since plaintiff had been working for Old Navy for over 20 years and was "over 40 protected class", there was risk with going directly to a written warning. Davis also stated that the additional 30 days time

13

plaintiff would be given was worth it to avoid "a situation where this [could] potentially drag out longer with complications." Plaintiff states that this shows her age was a factor in how to discipline her.

Defendant has shown that Duprey was the sole decision-maker with respect to deciding plaintiff's discipline and her termination, and that he was not required to follow in order any specific steps of discipline provided for in Old Navy's Corrective Action Policy. *See* Terrell, 320 F.Supp.3d at 660 (citing Williams v. Wells Fargo Bank, 2015 WL 1573745, at *9 (E.D.Pa. Apr. 9, 2015) (holding that defendant's failure to impose progressive discipline would not serve as evidence of pretext unless "a progressive disciplinary policy is 'mandatory or rigorously followed.'" (quoting Emmett v. Kwik Lok Corp., 528 Fed.Appx. 257, 262 (3d Cir. 2013)). Additionally, as defendant states, "[t]o the extent that plaintiff's age was considered by Mr. Davis in advising Mr. Duprey in the discipline process, it was considered to slow down, rather than expedite the process [ ]." Indeed, plaintiff was then issued a verbal warning by Duprey instead of a written warning.

"Direct evidence of discrimination would be evidence which, if believed, would prove the existence of the fact [in issue] without inference or presumption." Terrell, 320 F.Supp.3d at 656 n. 15 (quoting Torre v. Casio, Inc., 42 F.3d 825, 829 (3d Cir. 1994)). The court does not find that this email exchange between Duprey and Davis is direct evidence of age discrimination. Rather, Davis was clearly trying to avoid a situation in which plaintiff could argue age discrimination if Duprey jumped a step in the progressive discipline

14

process. Further, this evidence does not show that plaintiff's age was the "but cause" of disciplining her. The fact that the store leaders in plaintiff's store all quit was the cause of the discipline. Also, as defendant points out, the May 2, 2015 emails indicate that Duprey was made aware of plaintiff's age when Davis mentioned it.

Thus, plaintiff has not met her burden of persuasion to show direct evidence of age discrimination with respect to the emails.

Second, plaintiff contends that Duprey treated Artabane differently than her based on her age. Plaintiff states that on May 5, 2015, Duprey hired Artabane, who was 29 years old, to be an Assistant Store Manager in her store. Duprey recruited Artabane when she was working for another retail store and offered her more money. Artabane testified that she told Duprey she wanted to be a GM and that Duprey told her Old Navy was a great company for growth and that positions were opening up. Plaintiff then states that even though she issued Artabane a CA on September 1, 2015 due to performance issues, which made Artabane ineligible for an employee-initiated transfer, salary increase or promotion, Duprey promoted Artabane that same month to the GM of the Old Navy store in Wilkes-Barre with a raise. Plaintiff states that while she was later terminated for alleged poor performance and replaced by Riggi, who was only 32 and had only a few months experience with Old Navy, Artabane, who was younger, and "was actually in a period of ineligibility due to a [CA] for poor performance was promoted to [GM], given her own store, and received a substantial pay raise."

15

As defendant correctly notes, "evidence that the employer treated similarly situated employees outside of the plaintiff's protected class is circumstantial evidence of pretext - not direct evidence of discrimination." *See* Simpson v. Kay Jewelers, 142 F.3d 639, 645 (3d Cr. 1998) (citing Fuentes, 32 F.3d at 765).

Also, defendant's evidence shows that Artabane was eligible for a promotion despite the CA plaintiff issued to her since she was not under a Written Warning or Final Written Warning. Defendant also states that Artabane was promoted while plaintiff was still employed with it and that Artabane did not replace plaintiff.

As such, plaintiff has not met her burden of persuasion to show direct evidence of age discrimination with respect to Duprey's treatment of Artabane.

Thus, the court finds that there is no direct evidence of discrimination by the defendant. As such, plaintiff is proceeding on her ADEA claim based on circumstantial evidence. "Regardless of the method of proof, 'the plaintiff retains the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action.'" Terrell, 320 F.Supp.3d at 656 (quoting Gross, 557 U.S. at 177).

"Age discrimination claims in which the plaintiff relies on circumstantial evidence proceed according to the three-part burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Howell, 283 F.Supp.3d at 322-23 (citing Keller v. Orix Credit All., Inc., 130 F.3d 1101,

1108 (3d Cir. 1997)).

In *Howell, id.* at 323, the court detailed the three-part burden-shifting framework as follows:

> the plaintiff must first produce evidence sufficient to convince a reasonable factfinder as to all of the elements of a prima facie case of discrimination. Kautz v. Met–Pro Corp., 412 F.3d 463, 465 (3d Cir. 2005). If a plaintiff establishes a prima facie case, "the burden of production (but not the burden of persuasion) shifts to the defendant, who must then offer evidence that is sufficient, if believed, to support a finding that the defendant had a legitimate, nondiscriminatory reason for the adverse employment decision." *Id*. (internal citations and quotations omitted). An employer need not prove, however, that the proffered reasons actually motivated the employment decision. *Id.* If a defendant satisfies this burden, a plaintiff may then survive summary judgment by submitting evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. *Id*.

*See also* Smith v. City of Allentown, 589 F.3d 684, 689 (3d Cir. 2009).

"To establish a prima facie case of age discrimination, a plaintiff must demonstrate that (1) [she] is forty years of age or older; (2) the defendant took an adverse employment action against [her]; (3) [she] was qualified for the position in question; and (4) [she] was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus." Burton v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013). "The requirement that a plaintiff establish a prima facie case of discrimination 'is not intended to be onerous.'"Andersen v. Mack Trucks, Inc., 118 F.Supp.3d 723, 738 (E.D.Pa. 2015) (citation omitted).

Initially, the defendant notes that for purposes of its instant motion, it concedes that plaintiff has established a prima facie case of age discrimination. (Doc. 16 at 14 n. 2).

Thus, the court turns to the second step of the *McDonnell Douglas* framework. "At the second step of the *McDonnell Douglas* framework, the employer satisfies its 'relatively light' burden of production by introducing evidence which, taken as true, would permit a conclusion that there was a nondiscriminatory reason for its employment decision." Terrell, 320 F.Supp.3d at 657 (citing Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994)).

The defendant has met its burden by submitting an abundance of evidence that its proffered reason for terminating the plaintiff, i.e., her repeated failure to meet performance standards and expectations, was a legitimate nondiscriminatory reason for plaintiff's termination. The issue at this stage of the analysis is not whether plaintiff's performance was in fact substandard, "but whether [her] actual or perceived [performance] constitutes a legitimate, nondiscriminatory reason for Defendant's decision to terminate Plaintiff." Id. at 658. No doubt that poor work performance is a legitimate, nondiscriminatory justification for terminating an employee. See Carter v. Mid-Atlantic Healthcare, LLC, 228 F.Supp.3d 495, 505 (E.D.Pa. 2017) ("Courts within this district have routinely accepted evidence of a plaintiff's failure to meet expected performance goals, in addition to poor work performance, as facially legitimate, non-discriminatory reasons for adverse employment decisions.") (citations omitted).

Next, the court considers pretext. The Third Circuit in Smith, 589 F.3d at 689, stated that after the plaintiff satisfies the prima facie elements,

> the burden of production shifts to the employer to identify a legitimate nondiscriminatory reason for the adverse employment action. If the employer does so, the burden of production returns to the plaintiff to demonstrate that the employer's proffered rationale was a pretext for age discrimination. At all times, however, the burden of persuasion rests with the plaintiff.

As such, "the burden shifts back once more to the plaintiff to show, by a preponderance of the evidence, that the employer's proffered legitimate, nondiscriminatory reason was pretextual." Terrell, 320 F.Supp.3d at 658 (citation omitted). The plaintiff must now prove pretext by either discrediting defendant's proffered reason for her termination or showing that age discrimination was more likely than not the "but for" cause of her termination.

In order to show pretext, "the employee must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a . . . determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). In order to "discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent." Id. at 765. Moreover, "[t]he fact that an employee disagrees with an employer's evaluation of her does not prove pretext." Billet v. CIGNA

Corp., 940 F.2d 812, 825 (3d Cir. 1991), *overruled in part on other grounds*, St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993). "Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.' [Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 531 (3d Cir. 1992)], and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.' Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 638 (3d Cir. 1993)." Id.

The defendant argues that the plaintiff has failed to establish by a preponderance of the evidence that its proffered legitimate, non-discriminatory reason for her termination was pretextual. The defendant argues that its evidence shows the plaintiff was given repeated warnings about her poor work performance and that she continually failed to perform in accordance with its expectations for a GM of one of its stores. The court finds that the facts discussed above support the defendant's contention. Plaintiff had negative performance evaluations prior to her termination, her store failed to comply with three consecutive Store Compliance Audits, her store leaders resigned in mass, and she was warned more than once of the consequences of her failure to meet expectations. Further, plaintiff's performance issues began when Audrey Vesely and McCusker were her supervisors and continued when Duprey became her supervisor. (Doc. 20-4). Additionally, plaintiff received the discipline permitted under the defendant's policy. It is also of no moment that

the plaintiff disagreed with Duprey's evaluations of her and his beliefs that her performance was substandard since a plaintiff's subjective disagreement with her supervisor's performance evaluations is not evidence of pretext. Billet, 940 F.2d at 825; *see also* Andersen, 118 F.Supp. 3d at 747 ("In a discrimination case, the issue before the court is not the fairness of an employer's decision to terminate the plaintiff, but whether the record raises an issue of fact as to whether the decision was motivated by discriminatory animus.") (citation omitted).

The plaintiff's evidence "would [not] cause a reasonable factfinder to find the defendant's proffered reason 'unworthy of credence.'" Burton, 707 F.3d at 430. Thus, the court finds that the plaintiff has failed to meet her burden by establishing pretext under the first *Fuentes* method.

The court in Terell, 320 F.Supp.3d at 658-59, discussed the second method of establishing pretext and stated:

> Under the second prong of *Fuentes*, a plaintiff may establish pretext "by presenting evidence 'with sufficient probative force' so as to allow the factfinder to 'conclude by a preponderance of the evidence that age was a motivating or determinative factor.'" Willis, 808 F.3d at 645 (quoting Simpson, 142 F.3d at 644-45). This proof may consist of evidence that: "(1) the defendant previously discriminated against the plaintiff; (2) the defendant discriminated against others within the plaintiff's protected class; or (3) the defendant has treated similarly situated, substantially younger individuals more favorably." Id. With regard to workplace discipline, the relevant factors to consider in determining whether individuals are "similarly situated" may include a "'showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish the conduct or their employer's treatment of them.'"

21

McCullers v. Napolitano, 427 Fed.Appx. 190, 195 (3d Cir. 2011) (quoting Radue v. Kimberly–Clark Corp., 219 F.3d 612, 617–18 (7th Cir. 2000) ).

There is no evidence that the defendant previously discriminated against the plaintiff based on her age.

Plaintiff asserts that Duprey treated similarly situated younger employees more favorably than her. Plaintiff argues that Duprey preferred to hire younger employees such as Artabane and Riggi. She contends that when Duprey hired Artabane to work in her store as Assistant Manager without her input in the hiring process, he promised Artabane that she would eventually be promoted to plaintiff's position. However, as mentioned, Artabane was later promoted by Duprey to be the GM of the Wilkes-Barre store, at the time plaintiff was still GM of the Viewmont Mall store. Rather, Riggi, who was 8 years younger than plaintiff, eventually received plaintiff's position after her termination. There is also no dispute that Artabane had experience as manager in a retail clothing store that was comparable to plaintiff's. Despite plaintiff's claim that Riggi was not qualified, he had worked in other retail stores, including his work in a clothing store with Artabane and managing a Starbucks store. In fact, the plaintiff admitted that she interviewed Riggi for the Assistant Manager position after Artabane left and that she decided to hire him. As defendant points out, "[plaintiff's] implication that her own hiring decisions are somehow evidence of Mr. Duprey's discriminatory animus strains credulity."

Plaintiff also attempts to show that a factfinder could disbelieve the

defendant's articulated legitimate reason for terminating her by arguing that the defendant forced out other employees who were over 40 at its other stores. In particular, plaintiff testified that she believed Sharon Eigenbord, who was 55 and manager of the Old Navy store in Hazleton, PA was forced to resign due to her age, and that Audrey Vesely, over age 40, former District Manger for defendant, was terminated due to her age. Plaintiff relies upon Eigenbord's testimony for support. Eigenbord testified that Duprey was also her District Manger and that she felt like she was being pushed out by the defendant and that she was put on unattainable corrective actions. She stated that she resigned and felt that her age played a role in the defendant's actions against her. Eigenbord also stated that she saw many managers who worked for defendant and were over 40 either leave on their own or were forced out after the defendant set performance standards that were too difficult to meet. Further, Eigenbord stated that after she resigned a younger employee who was under age 40 was promoted to her position as GM. Eigenbord also stated that Vesely, over age 40, was District Manger before Duprey and, that even though the defendant told its store mangers that Vesely retired, everyone knew that she was terminated.

Plaintiff also testified that she believed she was placed on an action plan by Duprey because of her salary which was higher than several other employees, and that she felt she was targeted because she was a senior employee. She further stated that she believed Duprey issued the May 31, 2015 CA against her based on discrimination because her peers were not

held to the same high standard.

Plaintiff's contentions and evidence, including Eigenbord's testimony, are based on speculation and conjecture and this type of evidence is not sufficient to overcome a summary judgment motion. *See* Terrell, 320 F.Supp.3d at 660 (court found that plaintiff's own subjective beliefs without providing evidence to support a finding of discrimination were not sufficient to establish a pretext of age discrimination at the summary judgment stage) (citing James v. Sutliff Saturn, Inc., 468 Fed.Appx. 118, 121 (3d Cir. 2012) ("[Plaintiff's] unsupported belief that he was fired for discriminatory reasons falls far short of establishing pretext."); Tolan v. Temple Health Sys. Transp. Team, Inc., 2013 WL 706049, at *18 (E.D.Pa. Feb. 26, 2013) ("In the end we are left only with [plaintiff's] subjective belief that she was discriminated against, and that is not enough to survive summary judgment."), *aff'd*, 557 Fed.Appx. 132 (3d Cir. 2014)).

Additionally, Eigenbord testified that she did not personally know of the circumstances surrounding plaintiff's discipline and termination and that her knowledge of the events was based on what plaintiff told her. Eigenbord also admitted that when she resigned from working for the defendant, Duprey had not been her supervisor for over one year. The record also indicates that Duprey never placed Eigenbord on any corrective action when he was her supervisor.

Moreover, plaintiff does not establish that she and the other employees were similarly situated. As defendant points out, "there is no evidence in the

record about other employees' work performance and [plaintiff] has not and cannot point to any evidence showing that these individuals were similarly situated in that they had received the same performance complaints as had plaintiff, but were nevertheless treated more favorably."[4]

Further, even if the plaintiff disagrees with Duprey's assessment of her performance, including his belief that the plaintiff persistently failed to meet performance goals, failed at hiring and retaining talent, failed at hitting service scores, and failed to ensure that the presentation of the store was consistent

---

[4]To the extent plaintiff is trying to raise a pattern or practice claim of discrimination, she is not able to do so since individual plaintiffs who are not part of a class action cannot rely upon a pattern or practice claim. In Hohider v. United Parcel Service, Inc., 574 F.3d 169, 179 (3d Cir. 2009), the Third Circuit stated:

> The [Supreme] Court [in Cooper v. Federal Reserve Bank of Richmond, 467 U.S. 867, 104 S.Ct. 2794 (1984)] elaborated on the distinction between an individual claim of discrimination adjudicated under the *McDonnell Douglas* framework, where the focus is on uncovering "the reason for a particular employment decision," and a class-based pattern-or-practice claim under the *Teamsters* framework, which focuses at the "liability" stage not "'on individual hiring decisions, but on a pattern of discriminatory decisionmaking.'" Id. (quoting Teamsters, 431 U.S. at 360 n. 46, 97 S.Ct. 1843). Thus, in the class context, "the existence of a valid individual claim does not necessarily warrant the conclusion that the individual plaintiff may successfully maintain a class action," just as "a class plaintiff's attempt to prove the existence of a companywide policy ... may fail even though discrimination against one or two individuals has been proved." Id. at 877-78, 104 S.Ct. 2794.

*See also* Bacon v. Honda of America Mfg., Inc., 370 F.3d 565, 575 (6th Cir. 2004)(Sixth Circuit held "that the pattern-or-practice method of proving discrimination is not available to individual plaintiffs.").

with branding requirements, this still does not prove pretext. Billet, 940 F.2d at 825; Farzan v. Vanguard Grp., Inc., 582 Fed.Appx. 105, 108 (3d Cir. 2014). Moreover, "where an employer relies on particular criticisms for the adverse employment action, 'the issue is not whether the [ ] criticisms of [the plaintiff] were substantiated or valid.... [T]he question is whether [the employer] believed those criticisms to be accurate and actually relied upon them.'" Carter v. Mid-Atlantic Healthcare, LLC, 228 F.Supp.3d 495, 506 (E.D.Pa. 2017) (citation omitted).

Since the plaintiff has not demonstrated that the defendant's legitimate, non-discriminatory reasons for her termination were pretextual, the defendant is entitled to summary judgment as to the plaintiff's age discrimination claims under the ADEA and the PHRA. *See* Carter, 228 F.Supp.3d at 511-12.

## B. ADA CLAIM

Plaintiff also claims defendant violated the ADA since she was terminated due to an actual or perceived impairment, namely her anxiety disorder. She contends that she requested a reasonable accommodation from Duprey to work less hours than the 100 plus hours per week she was working because that schedule was causing her anxiety and panic attacks. Plaintiff maintains that Duprey then issued the corrective action against her shortly after she complained to him.

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job

training, and other terms, conditions, and privileges of employment." 42 U.S.C. §12112(a). To establish a prima facie case of disability discrimination under the statute, the plaintiff must show: "(1) [s]he is a disabled person within the meaning of the ADA; (2) [s]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) [s]he has suffered an otherwise adverse employment decision as a result of discrimination." Taylor v. Phoenixville School Dist., 184 F.3d 296, 306 (3d Cir. 1999) (citing Gaul v. Lucent Technologies, 134 F.3d 576, 580 (3d Cir. 1998)). The ADA defines a "disability" with respect to an individual as: "(a) a physical or mental impairment that substantially limits one or more major life activities of such individual; (b) a record of such impairment; or (c) being regarded as having such an impairment." 42 U.S.C. §12102(1).

The defendant concedes for purposes of its instant motion, that plaintiff is a disabled person under the ADA. However, the defendant contends that the plaintiff has not established that she is a qualified individual with a disability. Defendant contends that the plaintiff could not perform the essential functions of the GM position to run one of its Old Navy stores.

Under the ADA, a qualified individual with a disability is a person "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." §12111(8). An employee is a qualified individual if she satisfies the following requirements: (1) "[that she] has the requisite skill, experience, education and other job-related requirements" and (2) "[that] with or without

reasonable accommodation, [she] can perform the essential functions of that position." Turner v. Hershey Chocolate U.S., 440 F.3d 604, 612 (3d Cir. 2006) (citing 29 C.F.R. §1630.2(n)). "[T]he plaintiff bears the burden of proving that she is otherwise qualified; if an accommodation is needed, the plaintiff must show, as part of her burden of persuasion, that an effective accommodation exists that would render her otherwise qualified." Walton v. Mental Health Ass'n. of Se. Pennsylvania, 168 F.3d 661, 670 (3d Cir. 1999) (citation omitted).

Defendant submitted the job description for a GM to run one of its stores. The description is quoted in defendant's brief and will not be repeated. (Doc. 16 at 25).

Defendant states that "the GM role is the highest in-store position that is responsible for the overall management and operation of a store." As such, defendant states that one of the essential functions of plaintiff's position was to be "on-site at the Old Navy Viewmont store to oversee merchandising, branding, training and overall execution of the brand's initiatives."

Plaintiff testified that her anxiety began in 2011, which was over four years before she stated that she started to experience increased panic attacks caused by the pressures of her job as GM of the Old Navy store. She also testified that she continued to suffer from "severe anxiety and panic attacks" after her termination, and that she has not been able to seek comparable employment she had with the defendant after her termination since just entering a retail sales store causes her "huge anxiety." Thus,

defendant states that since plaintiff admittedly cannot enter a retail sales store and continued to suffer from severe anxiety after her termination, "there is no accommodation that [it] could reasonably provide to [plaintiff] that would enable her to perform the essential function of her job: managing the overall operations of a retail store."

Plaintiff responds that the stressors and pressures of her job was her working over 100 hours per week beginning in April of 2015, and that this caused her to seek medical care from Dr. Haley in June of 2015. Plaintiff testified that she informed Duprey of her anxiety in late April or early May of 2015. She also testified that she asked Duprey for a decrease in her work hours due to her anxiety and, that he responded by saying the increased hours were her own fault. Plaintiff states that the anxiety she experienced in the years before 2015 was minor and did not result in work issues. However, she states that after she was forced to work over 100 hours per week, especially with major staffing issues in her store, she "experienced anxiety and panic attacks, told her boss, requested a reduction in work hours, and was blamed for it." Duprey denied that plaintiff was required to work over 100 hours per week at any time, and stated that plaintiff was only required to work 40 hours per week. Duprey also denied that plaintiff ever asked him for a reduction in her work hours.

Plaintiff's admitted continued anxiety and inability to enter a retail store after her termination are not relevant to the determination of whether she was qualified to do the GM job before the alleged discriminatory conduct of

defendant when she was employed with defendant.

The court finds that the plaintiff has produced enough evidence to show that she could perform the essential functions of the GM job at her Old Navy store with a reasonable accommodation, namely, a reduction in the alleged work hours of 100 hours per week. Plaintiff continued to perform the job of GM after the exacerbation of her anxiety in the summer of 2015 up until her termination in January of 2016. Dr. Haley reported that the medication he prescribed plaintiff was helping with her anxiety. Plaintiff has also met her burden and showed that the proposed accommodation was reasonable and that the accommodation's cost did not "clearly exceed" its benefit. *See* Walton, 168 F.3d at 670.

The court now considers whether plaintiff has established that she suffered adverse employment actions, i.e., her action plans and her termination, due to her anxiety disability.

Plaintiff argues that Duprey regarded her as having a disability, and that she was not subjected to the disciplinary action plans until she complained to Duprey about working over 100 hour per week and telling him that the excessive hours were causing her anxiety and panic attacks. She contends that Duprey then targeted her and began imposing disciplinary actions against her due to her complaint about her anxiety in April or early May of 2015. Plaintiff states that Duprey and Davis then used her disability to establish a plan for her progressive write-up's and termination. Plaintiff points out that after she contends she told Duprey about her anxiety, he placed her on a

Verbal Warning CA shortly thereafter on May 31, 2015. Plaintiff argues that the defendant's reasons for disciplining and terminating her were a pretext for discrimination based on her disability.

No doubt that pretext cases under the ADA use the familiar *McDonnell Douglas* burden-shifting framework. *See* Willis v. Norristown Area School Dist., 2 F.Supp.3d 597, 604 (E.D.Pa. 2014).

As discussed above, plaintiff has established a prima facie case of disability discrimination under the ADA.

The defendant has presented a legitimate, nondiscriminatory reason for disciplining and terminating plaintiff, namely, her continual substandard performance. As such, the burden is now on the plaintiff to prove that the defendant's proffered reason for terminating her employment was pretextual. "A plaintiff can show pretext, and so defeat a motion for summary judgment, 'by either (I) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.'" Decker, 871 F.Supp.2d at 429 (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).

The undisputed evidence presented by the defendant shows that plaintiff's poor performance issues began in 2014, prior to Duprey becoming her supervisor. Plaintiff's prior supervisors Vesely and McCusker commenced steps to take corrective action against plaintiff well before her alleged disclosure of her anxiety to Duprey in April or early May of 2015. In fact,

McCusker prepared an IAP that he was going to issue plaintiff when he was her supervisor. Although McCusker did not actually issue the IAP to the plaintiff since he was transitioned to another position, Davis was aware of the IAP he had prepared and the reasons why. McCusker also told Duprey about his concerns regarding plaintiff's performance problems, and he told Duprey that he had prepared an IAP for plaintiff that was not delivered to her. Davis also advised Duprey of the corrective actions plaintiff's prior supervisors intended to issue against her in his May 2, 2015 email discussing disciplinary options against plaintiff due to her poor performance and the mass resignations of her store leaders.

Although plaintiff testified that she was working over 100 hours per week from April of 2015, she has offered no evidence to support this contention. Duprey testified that it was not possible for plaintiff to have worked over 100 hours per week since the Old Navy Viewmont store was not open 14 to 16 hours per day and since plaintiff was provided with employees from other stores to assist her after all of her store leaders resigned. Defendant also points out that plaintiff admitted that her job related anxiety was only temporary because the excessive hours she allegedly was working had been resolved in July 2015, and she reported to Dr. Haley that her anxiety had improved.

The court finds that the plaintiff's evidence fails to create a genuine issue of material fact to show that the defendant's nondiscriminatory reason for the corrective actions and her termination was pretextual. No reasonable

jury could find that the reasons for plaintiff's action plans and termination "were a fabrication or that discrimination [due to her anxiety disability] was more likely than not the motivating or determinative cause of plaintiff's termination." Willis, 2 F.Supp.3d at 606.

Thus, since plaintiff's evidence is insufficient to show disability discrimination by the defendant under the ADA, the court will grant defendant's summary judgment motion with respect to this claim. Since the same standard applies to plaintiff's disability discrimination under the PHRA, the defendant is also entitled to summary judgment on this state law claim as well. Id. at 604 n. 10 ("Courts within this Circuit interpret the ADA and PHRA coextensively.") (citation omitted).


## IV.    CONCLUSION

Based on the foregoing reasons, since the plaintiff has not demonstrated that the defendant's legitimate, non-discriminatory reasons for her termination were pretextual, the defendant is entitled to summary judgment as to the plaintiff's age discrimination claims under the ADEA and the PHRA, and her disability discrimination claims under the ADA and the PHRA . An appropriate order shall issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: November 15, 2018**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2017 MEMORANDA\17-1265-01.wpd